UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRIANNA OWENS,

Plaintiff,

-vs-

INSOMNIA COOKIES, LLC,

Defendant.

_____

DECISION and
ORDER

24-CV-6434 CJS

## INTRODUCTION

Plaintiff commenced this action against her former employer alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Now before the Court is Defendant's motion (ECF No. 18) to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), in which Defendant contends that the pleading fails to state any federal claim, and that the Court should decline to exercise jurisdiction over the remaining state-law claims, pursuant to 28 U.S.C. § 1367(c)(3). Defendant's motion is granted in part and denied in part, and the Court will dismiss the remaining claims unless Plaintiff files a motion to amend as discussed below.

## BACKGROUND

Unless otherwise noted, the following facts are taken primarily from Plaintiff's First Amended Complaint, ECF No. 15, and are assumed to be true for purposes of this Decision and Order. Defendant Insomnia Cookies ("Insomnia") is a Pennsylvania Limited Liability Company that operates a chain of stores selling cookies, other baked goods, and ice cream. Between July 30, 2018, and July 2, 2023, Brianna Owens ("Plaintiff" or

1

"Owens") was employed as a delivery driver at Insomnia's shop located on Mount Hope Avenue in Rochester, New York.[1]

The Amended Complaint indicates that throughout Plaintiff's employment she drove approximately fifty (50) miles per day to make deliveries for Defendant's benefit, but was not compensated for her mileage except during the period of June 12, 2023 to June 25, 2023. Amended Complaint at ¶ ¶ 28-29.

At all relevant times during her employment with Insomnia, Plaintiff was a part-time, hourly employee. The Amended Complaint describes Plaintiff's typical weekly work schedule as follows:

> From on or about July 30, 2018 through on or about July 10, 202[2], OWENS typically worked about thirty (30) hours per week; typically about seven and one-half (7.5) hours per day, typically four (4) or five (5) days per week.
>
> From on or about July 11, 2022 through on about July 2, 2023, OWENS typically worked about thirteen (13) hours per week; typically about four and one-third (4.33) hours per day, day, typically two (2) or three (3) days per week.

Amended Complaint at ¶ ¶ 21-22.

The Amended Complaint describes Plaintiff's base compensation during the relevant period as follows:

> From on or about July 30, 2018 through on or about December 30, 2018, Defendant paid OWENS a base wage of fourteen dollars ($14.00) per hour.
>
> From on or about December 31, 2018 through on or about December 29, 2019, Defendant paid OWENS a base wage of fourteen dollars and fifty cents ($14.50) per hour.

---

[1] Plaintiff claims to have worked consistently throughout that time, except during the following periods: April 12-18, 2021; September 13, 2021-December 12, 2021; January 10, 2022-January 16, 2022; December 12, 2022-January 8, 2023; March 6, 2023-March 12, 2023; and May 8, 2023-May 28, 2023.

> From on or about December 30, 2019 through on or about December 27, 2020, Defendant paid OWENS a base wage of fifteen dollars ($15.00) per hour.
>
> From on or about December 28, 2020 through on or about March 6, 2022, Defendant paid OWENS a base wage of fifteen dollars and seventy-five cents ($15.75) per hour.
>
> From on or about March 7, 2022 through on or about July 2, 2023, Defendant paid OWENS a base wage of sixteen dollars and twenty-two cents ($16.22) per hour.

Amended Complaint at ¶ ¶ 23-27.

Plaintiff also earned tips from customers using Insomnia's electronic point of sale ("POS") system, which Insomnia would then distribute to Plaintiff in her paycheck along with her hourly wages. Plaintiff maintains, however, that Insomnia misappropriated some of her tips, in two ways.

First, she alleges that Insomnia retained some tips, since her paychecks did not include all tips that delivery customers paid to her using Insomnia's POS system. Second, she contends that Insomnia never paid her any portion of a delivery fee that was added to all delivery orders. More specifically, she alleges that, between July 30, 2018, and March 22, 2020, Insomnia charged its delivery customers, in addition to the cost of their food orders, an additional fee of $3.00 per order, and that after March 22, 2020, Insomnia increased the fee to $3.50 per delivery order. Insomnia never shared this fee with delivery drivers, which, Plaintiff contends, violates the FLSA since the delivery fee was a tip.

On July 12, 2024, Plaintiff commenced this action. The Amended Complaint purports to assert the following seven (7) causes of action: 1) violation of the FLSA, 29 U.S.C. § 206, for "failure to pay mileage"; 2) violation of the NYLL, § 652, for "failure to

pay mileage"; 3) violation of the FLSA, 29 U.S.C. § 203(m), for "misappropriation of tips"; 4) violation of NYLL § 198-d, for "misappropriation of tips"; 5) violation of New York Law, § 12 N.Y.C.R.R. § 146-1.6, for failure to pay "spread of hours"; 6) violation of NYLL § 195(1)(a), for "failure to furnish wage notice"; and 7) violation of NYLL § 195(3), for "failure to furnish wage statements."   The pleading thus purports to state two FLSA claims, for "failure to pay mileage" resulting in a minimum-wage violation and "misappropriation of tips," respectively, along with five state-law claims.

Insomnia subsequently filed the subject motion to dismiss the Amended Complaint, ECF No. 18.  The motion contends that the pleading fails to state any plausible FLSA claim,[2] and that the Court should therefore dismiss such claims and decline to exercise jurisdiction over Plaintiff's NYLL claims.   Insomnia's memorandum of law summarizes its arguments concerning the FLSA claims as follows:

> Plaintiff has failed to plead a minimum wage violation under the FLSA (Count I) because her allegations[,] regarding alleged mileage expenses reducing her hourly wage below the FLSA minimum wage[,] are internally inconsistent, facially implausible, and factually insufficient. Plaintiff has failed plausibly to plead any facts that establish she suffered any FLSA damages, costs, or expenses related to her miles driven for Insomnia. Additionally, even if Plaintiff's implausible allegations about her daily mileage totals and related expenses are assumed true, *arguendo*, she has admitted that she was paid well above the applicable federal minimum wage of $7.25 throughout her employment and has not provided a single instance when her effective hourly wage rate fell below $7.25 to support such a claim.
>
> Plaintiff's second claim under the FLSA (Count III), for alleged[ ] misappropriat[ion of] tips, fares no better, under either of her proposed theories of liability. Plaintiff's allegation that an alleged fixed fee charged to customers for deliveries was instead an improperly withheld gratuity is devoid of any requisite factual support in the Amended Complaint and

---

[2] *See*, ECF No. 1 at p. 6 ("She has alleged neither a minimum wage nor a tip misappropriation violation of the Act," referring to the FLSA.)

4

contrary to FLSA guidance and case law regarding compulsory charges, which are not tips. Plaintiff's remaining FLSA violation theory relies on a vague allegation of an unspecified "shortfall" in tips with no requisite specified facts in support. Moreover, this claim is disproven by the same systems that Plaintiff herself referenced in the Amended Complaint, namely the tip data from Insomnia's point of sale ("POS") system and payroll system, which show that everything reflected in one was paid to Plaintiff in the other.

ECF No. 21 at pp. 1-2.

Regarding the reference in the preceding paragraph to "tip data from Insomnia's point of sale system and payroll system," Insomnia has submitted a sworn declaration from Lauren Nix ("Nix"), Insomnia's "Vice President of People," with attached records purporting to show, for the period July 12, 2021 onward, for every delivery made by Plaintiff, the following: The identification number of each delivery; "the date and time the delivery was completed"; "the credit card tip amount Plaintiff received for the delivery; Plaintiff's "total credit card tips accrued per weekly pay period"; and "all the compensation Plaintiff was paid from July 12, 2021, to the present." ECF No. 20.[3]  Insomnia's counsel has also submitted a declaration purporting to explain what the records attached to Nix's declaration show, namely, that for the period covered by those records, Plaintiff was actually paid more in tips by Insomnia than the records show were given to her by customers. ECF No. 19; *see also*, ECF No. 21 at p. 18 ("In fact, Plaintiff's 'underpayment' of $17.55 from those 3 weeks was fully reimbursed and surpassed, by the 7 work weeks in wherein she was overpaid a total of $45.02 which comes out to a net overpayment of credit card tips of $22.47 across the three year liability period.").

Alternatively, Insomnia's motion contends that even if the Amended Complaint

---

[3] July 12, 2021 is three years prior to the date Plaintiff commenced this action.

states an FLSA claim, it does not sufficiently plead that Insomnia committed an FLSA violation willfully, as is necessary to have a three-year limitations period, rather than a two-year period, apply to Plaintiff's claims.

Plaintiff opposes the motion, maintaining that she has stated FLSA minimum-wage and tip-misappropriation claims. Regarding the FLSA minimum-wage claim, Plaintiff asserts that the Amended Complaint "adequately alleges that because of her being required to use the delivery vehicle at her own expense, her equivalent hourly wage rate sometimes dipped below the federal minimum wage." ECF No. 24 at p. 8. Alternatively, Plaintiff argues that she should be able to obtain discovery on this point, since "the records as to the exact mileage" she drove are "maintained by Insomnia." *Id*.

Regarding the FLSA tip claims, Plaintiff contends that to state such a claim under 29 U.S.C. sec 203(m)(2), she need only plead that Insomnia kept "any portion" of her tips, which she has done. In particular, she maintains she has plausibly alleged that Insomnia charged all delivery customers a flat fee of either $3.00 or $3.50 per delivery, which was a tip, and which Insomnia kept. Further, she contends that she has plausibly alleged that Insomnia also kept some portion of the tips given to her by customers using the POS system, by asserting that Insomnia "manipulated the point of sale system." ECF No. 24 at p. 4.

Finally, Plaintiff asserts that the Court should allow her to amend her pleading if it determines that her federal claims are inadequately pleaded.

ANALYSIS

Motions Under Rule 12(b)(6)

The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6)

6

are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the other way around." *Angiulo v. Cty. of Westchester*, No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.'") (quoting *Iqbal* ).

A plaintiff cannot avoid the necessity of pleading a plausible claim supported by factual allegations merely by asserting statements "upon information and belief" without explaining the basis for the belief. *D'Alessandro v. City of New York*, 713 F. App'x 1, 6–7 (2d Cir. 2017).

<u>The Amended Complaint Fails to Plead a Willful FLSA Violation</u>

Insomnia maintains that FLSA claims in this action are time-barred insofar as they go back more than two years before Plaintiff commenced this action on July 12, 2024. The Court agrees.

"The limitations period for FLSA claims is two years *or, if the violation was willful, three years*. 29 U.S.C. § 255(a)." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 199 n. 4 (2d Cir. 2013) (emphasis added).

An FLSA cause of action "accrues on the next regular payday following the work period when services are rendered," meaning that "each paycheck represents a potential cause of action." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d at 198.

"Although a statute of limitations defense is an affirmative defense that must ordinarily be asserted in a motion for summary judgment, a defendant may nevertheless assert such a defense on a motion to dismiss if it appears on the face of a complaint that Plaintiff's claims fall outside of the limitations period." *Zhongwei Zhou v. Wu*, No. 14-CV-1775 RJS, 2015 WL 925962, at *3 (S.D.N.Y. Mar. 3, 2015) (citations omitted).

The standard for willfulness under the FLSA is clear: "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (citation omitted).  "That is, if an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 324 (2d Cir. 2021) (citation and internal quotation marks omitted).

"FLSA plaintiffs must plausibly allege willfulness to secure the benefit of the three-year exception at the pleadings stage." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d at 320; *see also, Id*. at 321 ("An averment of "willfulness" is thus precisely the sort of legal conclusion that *Twombly* and *Iqbal* counsel must be supported by factual allegations at

9

the pleadings stage.").

However, before even reaching the question of willfulness in this action, it is evident that a portion of Plaintiff's FLSA claims are time barred since they arose more than three years prior to the commencement of the action. *See, e.g., Ali v. High-Steppers Corp.*, No. 24 CIV. 3938 (GS), 2025 WL 547798, at *1 (S.D.N.Y. Feb. 19, 2025) ("[A] portion of Plaintiffs' claimed damages relates to their employment during 2019 and 2020, more than three years before the filing of the Complaint in 2024, and hence would not be recoverable under the FLSA due to its three-year statute of limitations."). That is, the Complaint refers to events going back to July 2018. However, since Plaintiff commenced this action on July 12, 2024, any FLSA claims dating farther back than July 12, 2021, are time-barred, even assuming that the pleading adequately alleged willful violations.

The Amended Complaint, though, does not adequately allege willful violations, but, rather, makes only conclusory allegations of willfulness, unsupported by any facts that would make them plausible. Indeed, the closest the pleading comes in this regard is paragraphs 46, 52, and 64, which state, respectively: "46. Defendant committing [sic] the foregoing alleged acts knowingly, intentionally, willfully, and maliciously against OWENS"; "52. Defendant knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to reimburse Plaintiff's mileage"; and "64. Defendant knowingly, willfully, and maliciously disregarded the provisions of the FLSA by misappropriating Plaintiff's tips." These statements are bare legal conclusions that are insufficient to plausibly plead willfulness. Nor does the pleading otherwise provide any supporting facts to make the allegations plausible.

10

Consequently, the Court finds that the Amended Complaint fails to state any willful FLSA violation, and that the general two-year statute of limitations governs the timeliness of Plaintiff's FLSA claims. Accordingly, any FLSA claims arising prior to July 12, 2022, are dismissed as time barred.

<u>The Amended Complaint Fails to Plead an FLSA Minimum Wage Claim</u>

Plaintiff's first cause of action in the Amended Complaint, titled "Violation of 29 U.S.C. § 206- Failure to Pay Mileage," is based on 29 C.F.R. § 531.35, which states in pertinent part, that, wages must be paid to an employee "free and clear," and that,

> if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

29 C.F.R. § 531.35 (Westlaw 2026). The claim contends that Plaintiff's delivery vehicle was a "tool of the trade," and that Insomnia was required to reimburse Plaintiff for her mileage costs, since her "unreimbursed mileage expenses frequently drove her net hourly wage to below the federal minimum wage[.]"[4] The pleading rests this claim on allegations that Plaintiff drove approximately 50 miles per day, for which she was entitled to be

---

[4] Amended Complaint at p. 8. To the extent Plaintiff may be attempting to assert a freestanding FLSA claim for reimbursement of mileage expenses without regard to the federal minimum wage, such a claim is not actionable. *See, Hong v. JP White Plains, Inc*., No. 19 CV 5018 (NSR), 2021 WL 1226566, at *7 (S.D.N.Y. Mar. 31, 2021) ("[U]nder New York law, employers do not have to reimburse employees for business expenses ... so long as not doing so does not reduce the employee's wage below the minimum wage." *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 507 (S.D.N.Y. 2013) (citation omitted); *see also Lin v. Benihana Nat'l Corp*., 755 F. Supp. 2d 504, 511-12 (S.D.N.Y. 2010) (collecting cases). Courts have likewise interpreted the FLSA to only "prohibit[ ] employers from requiring employees to purchase the tools of their trade or give any money back to their employers, when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." *Jiaren Wei v. Lingtou Zhengs Corp*., No. 13-cv-5164, 2015 WL 739943, at *13 (E.D.N.Y. Feb. 20, 2015) (internal quotation marks and citation omitted). In sum, the FLSA and NYLL merely prohibit certain deductions and do not require credit or reimbursement unless failure to credit or reimburse would bring an employee's effective rate below the statutory minimum wage.").

11

reimbursed at the Internal Revenue Service's ("IRS") standard business reimbursement rate.

Based on the Court's finding above that a two-year statute of limitations applies to Plaintiff's FLSA claims, the issue is whether the Amended Complaint states a plausible claim that Plaintiff's unreimbursed vehicle expenses caused her to be paid less than the federal minimum wage for any workweek between July 12, 2022 and July 2, 2023.[5]

The Amended Complaint indicates that during this relevant period Plaintiff "typically worked about thirteen (13) hours per week" across "two or three days"[6] and was paid "a base wage" of $16.22 per hour.[7]   The Court takes judicial notice of the fact that, according to the IRS's website, the business mileage reimbursement rates for 2022 and 2023 were, 62.5 cents/mile and 65.5 cents/mile, respectively.   The Court further takes judicial notice that at all relevant times the federal minimum wage was $7.25 per hour.

Insomnia contends that the pleading fails to state a plausible minimum wage claim based on the company's alleged failure to reimburse Plaintiff for mileage, primarily since, even assuming that the facts in the pleading are true, they do not show that Insomnia ever paid Plaintiff less than the federal minimum wage.[8]

Plaintiff disagrees and contends that the Amended Complaint adequately states a minimum wage claim.

---

[5] Plaintiff stopped working on July 2, 2023 and commenced this action on July 12, 2024.  The statute of limitations excludes claims pre-dating July 12, 2022.
Amended Complaint at ¶ ¶ 23-29.July 2, 2023.
[6] Amended Complaint at ¶ 22.  The Courts that the preceding paragraph of the pleading states that "from on or about July 30, 2018 through on or about July 10, 20**23**, Plaintiff typically worked four or five days per week.  However, in response to the Court's query by email, Plaintiff's counsel confirmed that was a scrivener's error, and that the date should have been July 10, 2022.
[7] Amended Complaint at ¶ 27.
[8] Insomnia also contends that Plaintiff's allegations are facially implausible, regarding the amount of driving that she did, and inadequate to show that she is even entitled to mileage reimbursement. ECF No. 21 at p. 3.

12

However, the Court agrees with Insomnia that, even assuming the truth of the allegations in the pleading, Plaintiff has not plausibly alleged that Insomnia ever paid her less than the federal minimum wage for any workweek, even after factoring in her alleged unreimbursed mileage expenses.

More specifically, between July 12, 2022, and December 31, 2022, the IRS business reimbursement rate was 62.5 cents/mile. Assuming a typical three-day workweek in which Plaintiff drove 50 miles per day, her unreimbursed expenses would have been $93.75 per week. Further assuming that Plaintiff typically worked thirteen hours per work at a rate of $16.22 per hour, her wages would have been $210.86 per week. Subtracting $93.75 from that amount leaves $117.11, which, when divided by 13 hours, results in an hourly rate of $9.00 per hour, which is more than the federal minimum wage.

Further, between January 1, 2023, and July 2, 2023, the IRS business reimbursement rate was 65.5 cents/mile. Assuming a typical three-day workweek in which Plaintiff drove 50 miles per day, her unreimbursed expenses would have been $98.25 per week. Further assuming that Plaintiff typically worked thirteen hours per work at a rate of $16.22 per hour, her wages would have been $210.86 per week. Subtracting $98.25 from that amount leaves $112.61, which, when divided by 13 hours, results in an hourly rate of $8.66 per hour, which is more than the federal minimum wage.

Consequently, the pleading does not plausibly allege that Plaintiff was paid less than the federal minimum wage for any workweek within the applicable two-year limitations period. Plaintiff's first cause of action is therefore dismissed.

The Amended Complaint Fails to State a Plausible Tip Misappropriation Claim

Insomnia next contends that the Amended Complaint fails to state a claim that Insomnia kept any of Plaintiff's tips.  In this regard, the FLSA clearly prohibits employers from keeping an employee's tips:

> The FLSA provides that "an employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C.A. § 203(m)(2)(B).

*Lee v. Insomnia Cookies LLC*, No. 23-CV-6321-FPG, 2024 WL 1055639, at *7 (W.D.N.Y. Mar. 11, 2024).

The Amended Complaint purports to state two types of FLSA tip misappropriation claim: One based on Insomnia's alleged retention of a delivery fee, and one based on Insomnia's alleged retention of tips paid to Plaintiff electronically by customers using the POS system.

Insomnia contends that the claim fails insofar as it is based on the flat-rate delivery fee that applied to all delivery orders.  The Court agrees, since it is clear that mandatory service fees charged to customers by the employer are not tips under the FLSA, regardless of how the fee is represented to customers. *See*, 29 C.F.R. § 531.52(a) ("A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for the customer. It is to be distinguished from payment of a charge, if any, made for the service.") (Westlaw 2026); *see also*, *Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18-CV-7342 (JGK), 2022 WL 596831, at *7 (S.D.N.Y. Feb. 25, 2022) ("[U]nder the FLSA, a compulsory charge such as the delivery fee is not a tip. *See In re Domino's Pizza, Inc.*, No. 16-cv-6274, 2018 WL 1587593, at *3-4 (S.D.N.Y. Mar. 27, 2018) (rejecting the argument that a delivery fee was a tip; explaining that a mandatory flat delivery fee is a

"compulsory charge for service, which does not constitute a tip.") (citing 29 C.F.R. § 531.55(a))."); *see also, Nwajei v. E&E of Five Towns, Inc.*, No. 23-CV-5541 (JMA) (JMW), 2024 WL 3522108, at *7 (E.D.N.Y. July 9, 2024) ("[Under the FLSA, a service charge is a compulsory charge imposed by the employer, while a tip is a voluntary amount give in gratuity by a customer for service staff, and, although employers cannot retain any portion of their employees' tips, service charges are not considered to be tips, and employers can therefore keep all proceeds that come from said charge.") (collecting cases), report and recommendation adopted, No. 23-CV-5541 (JMA) (JMW), 2024 WL 3520633 (E.D.N.Y. July 24, 2024); *In re Domino's Pizza Inc.*, No. 16 CIV. 6274 (AJN), 2018 WL 1587593, at *4 (S.D.N.Y. Mar. 27, 2018) ("Plaintiffs have not sufficiently alleged that the delivery fee qualified as a tip. The complaint describes the delivery fee as a "mandatory flat 'delivery fee' applied to each Domino's Pizza order." FAC ¶ 2; *see* FAC ¶¶ 68-70. Although Plaintiffs allege that customers, thinking the delivery fee will go to the deliveryman, may not tip the deliveryman, FAC ¶ 75, that allegation does not transform the delivery fee into a tip. Instead, Plaintiffs' allegations demonstrate that the delivery fee is a "compulsory charge for service," which does not constitute a tip. *See* 29 C.F.R. § 531.55(a). Plaintiffs have thus failed to sufficiently allege a FLSA claim for unlawful tip retention based on Defendants' alleged retention of the delivery fee.").

Here, the delivery fee that Plaintiff describes is a flat-rate fee set by Insomnia, and, consequently, it is not a tip under the FLSA. *See*, 29 C.F.R. § 531.55 ("A compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip[.]"). Accordingly, Plaintiff's FLSA tip misappropriation claim is dismissed insofar as it is based on Insomnia's retention of the

15

delivery fee.

Insomnia next contends that the pleading also fails to state a claim based on Insomnia's alleged retention of tips paid to Plaintiff by customers using the POS system, primarily since Insomnia's records, discussed earlier, show that Plaintiff received all tips given to her by customers using that system.   Insomnia admits that the records are "extrinsic" to the pleading, but contends that the Court can consider them on a 12(b)(6) motion since the Amended Complaint "references" the POS system and Plaintiff's paychecks:

> Plaintiff's allegation of tip misappropriation under the FLSA is also directly contradicted by extrinsic evidence that Plaintiff directly references in the [Amended Complaint].  . . .  Plaintiff directly references the tip data she observed within Insomnia's POS system, and her own payroll records, as being the basis for her claim, and [for] her belief she was improperly [not] paid her accrued credit card tips.  . . .  Because the tip data reflected in Insomnia's POS system and payroll data . . . are documents central to Plaintiff's alleged tip misappropriation claim based on Plaintiff's own alleged observations, it is appropriate for this Court to consider them for purposes of this motion to dismiss.

ECF No. 21 at pp. 15-16.  Insomnia thus appears to argue that the extrinsic records are incorporated by reference into the pleading and/or integral to the pleading.

However, the Court declines to consider the records, since they do not contain facts of which the Court can take judicial notice, nor are they attached to the Amended Complaint, incorporated by reference into the pleading, or "integral" to the pleading. *Heckman v. Town of Hempstead*, 568 F. App'x at 43.

For example, the Court finds that the pleading's references to the POS system and Plaintiff's paychecks are not sufficiently definite to amount to incorporation by reference. *See, e.g., Lancaster v. Am. Textile Co., Inc.*, 719 F. Supp. 3d 204, 216 (N.D.N.Y. 2024)

16

("To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the document[ ].") (citations omitted).  Indeed, the pleading does not actually refer to the documents Insomnia has submitted.  Rather, it refers to what Plaintiff allegedly saw when looking at unspecified digital POS transactions and unspecified paychecks.

Similarly, the records are not integral to the pleading, since there is no indication that Plaintiff relied heavily upon the actual documents when preparing the Amended Complaint. *See, e.g., Goel v. Bunge, Ltd*., 820 F.3d 554, 559 (2d Cir. 2016) ("A document is integral to the complaint "where the complaint relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir.2002) (internal quotation marks omitted). Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering "limited quotation[s]" from the document is not enough. *Global Network Commc'ns*, 458 F.3d at 156; *see also Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir.1985).").

Further, it appears that Plaintiff disputes the authenticity of the records, which would independently make it improper for the Court to consider them. *See, Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("[E]ven if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.").  In this regard, Insomnia contends that the POS records are consistent with the payroll records, but the pleading alleges that the information Plaintiff saw on the POS system was inconsistent with her paychecks.[9]

---

[9] Again, such a dispute would depend on whether Insomnia's documents even pertain to the alleged instances where what Plaintiff observed on the POS system was different from what was on her paychecks.

17

In sum, the Court declines to consider the extrinsic materials submitted along with Insomnia's motion.  Consequently, to the extent Insomnia's application to dismiss the tip misappropriation claim is based on such records, it is denied.

Insomnia nevertheless alternately contends that the Amended Complaint fails to state an FLSA tip misappropriation claim based on what Plaintiff claims to have observed on the POS system, since the allegations are too vague to be plausible:

> Plaintiff does not provide any amount or estimation of what percentage or portion of these tips were retained.  Notwithstanding her multi-year tenure with Insomnia, Plaintiff does not identify a single instance of such misappropriation, provide any detail regarding where these retained gratuities went, or how the gratuities she received  on a per delivery basis failed to reconcile with the weekly distribution of same outside of a blanket argument that they did not match up.  . . .  Plaintiff's allegations are nothing more than speculation without any particularized, specific facts tending to show that it was plausible that Plaintiff's tips were unlawfully withheld.

ECF No. 21 at p. 14.

The Court agrees with Insomnia.  In this regard, the Amended Complaint makes the following allegations concerning the alleged misappropriation of Plaintiff's tips from the POS system:

> 34. During her employment, OWENS observed that over the course of a given workweek, the charge-card tips received on her orders, as displayed by Defendant's point-of-sale system, exceeded the amounts of charge-card tips Defendant remitted to her along with her paychecks, as set forth on her wage statements.
>
>                                     ***
>
> 61. Throughout her employment, Defendant retained a portion of charge-card tips given by customers to Plaintiff.

Amended Complaint, ¶ ¶ 34, 61; *see also, id*. at ¶ 38 (Asserting "upon information and belief" that Insomnia "withheld tips" from Plaintiff's pay).

18

In the specific context of this case, including that the pleading refers to five-year period of employment, most of which is outside the statute of limitations, without specifying any particular incident or even a general time frame for the alleged tip-misappropriation violation, the Court agrees that the pleading contains insufficient supporting facts to state a plausible claim. Rather, the statements above amount to bald assertions that "Insomnia misappropriated tips," without any supporting facts to make the assertions plausible.

Regarding the complete lack of detail concerning the date(s) or number of alleged tip misappropriations, the Court is aware that courts in this Circuit have permitted FLSA overtime claims to proceed where the pleading, while not specifying the dates of any particular alleged violations, nevertheless alleged that the violations occurred during every week of the plaintiff's employment:

> [Our] precedents require only that plaintiffs "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." The pleading standard is satisfied . . . if plaintiffs allege that their regularly scheduled workweek for a given period of time included more than forty hours of work, so that they were eligible for overtime during <u>every</u> week in which they worked their regular schedule.

*Herrera v. Comme des Garcons, Ltd*., 84 F.4th 110, 116–17 (2d Cir. 2023) (emphasis in original; citation omitted).

In the somewhat analogous situation presented here, however, not only does the pleading not allege that Insomnia misappropriated tips during every week of her employment, it does not specify any week in which Insomnia allegedly did so. Nor does it provide any other supporting details. Consequently, the Court finds that it is too vague to state a plausible tip misappropriation claim. *See, Herrera v. Comme des Garcons*, 84

19

F.4th at 116 -117 ("This pleading standard is unmet if all that plaintiffs allege is that at some undefined period in their employment they worked more than forty hours in a single week. Such an allegation would be far too vague and unhelpful for putting a defendant on notice of the alleged violation."); *compare, Lee v. Insomnia Cookies LLC*, No. 23-CV-6321-FPG, 2024 WL 1055639, at *7-8 (W.D.N.Y. Mar. 11, 2024) ("Plaintiff alleges more than mere legal conclusions. First, he specifically alleges the amount of tips that were misappropriated—ten to fifteen dollars. . . . [Also,] contrary to Defendants' assertion that "he does not identify a single instance of such misappropriation," Plaintiff identifies several. Specifically, Plaintiff alleges that his tips were misappropriated "each week." With this information, Defendants are put on fair notice that Plaintiff's claim for misappropriated tips spans at least the entire duration of his employment on a weekly basis and that the amount involved ranges between ten to fifteen dollars in each instance."). Consequently, "Count III" of the Amended Complaint is dismissed.

Remaining Applications

The Court having dismissed Plaintiff's FLSA claims, Insomnia requests that the Court further dismiss the remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff, though, asserts that the Court should allow her to amend her pleading. The Court will allow Plaintiff an opportunity to replead her federal claims, provided that she can do so consistent with Rule 11. *See, e.g., Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 24–25 (2d Cir. 2017) ("[T]he District Court exceeded the permissible bounds of its discretion in failing to heed the message of *Loreley*, and denying Cresci an opportunity to amend after the court rendered its decision on defendant's motion to dismiss.").

20

CONCLUSION

Defendants' motion to dismiss (ECF No. 18) is granted in part, in that "Count I" and "Count III" of the Amended Complaint are dismissed. The Court will hold the remainder of Insomnia's application in abeyance, pending the outcome of any motion to amend the Complaint. Plaintiff must file any such application within thirty (30) days of the date of this Decision and Order. Any such application must comply with the Federal Rules of Civil Procedure and Rule 15 of the Local Rules of Civil Procedure. In the event that Plaintiff does not file a motion to amend by that deadline, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims and dismiss them without prejudice.

SO ORDERED.

Dated: Rochester, New York
    July 24, 2026

ENTER:

_Charles J. Siragusa_
CHARLES J. SIRAGUSA
United States District Judge

21